UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD A. FLEMING, ) | Case No. CV 08-4214 JC |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND |
| v. ) | ORDER OF REMAND |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**I.    SUMMARY**

On July 1, 2008, Edward A. Fleming ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 2, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed adequately to address the medical opinion evidence.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On May 29, 2003, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 16, 80-83). Plaintiff asserted that he became disabled on September 23, 1990, due to mental problems and diabetes. (AR 16, 99). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on May 10, 2006. (AR 567-77).

On September 23, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 26). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairment: borderline intellectual functioning (AR 18); (2) plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments (AR 18); (3) plaintiff could perform unskilled work at all exertional levels (AR 18); (4) plaintiff had no past relevant work (AR 25); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform; and (6) plaintiff's allegations regarding his limitations were not entirely credible (AR 24).

The Appeals Council denied plaintiff's application for review on May 6, 2008. (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

1    The claimant has the burden of proof at steps one through four, and the
2 Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
3 F.3d 949, 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant
4 carries initial burden of proving disability).
5    **B.    Standard of Review**
6    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
7 benefits only if it is not supported by substantial evidence or if it is based on legal
8 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
9 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
10 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
11 mind might accept as adequate to support a conclusion."  Richardson v. Perales,
12 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
13 mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
14 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).
15    To determine whether substantial evidence supports a finding, a court must
16 "'consider the record as a whole, weighing both evidence that supports and
17 evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
18 Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
19 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
20 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
21 of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).
22 **IV.    DISCUSSION**
23    **A.    The ALJ Failed Properly to Consider Portions of the Opinion of**
24         **Dr. Riahinejad**
25    Plaintiff contends that the ALJ failed to address significant mental
26 limitations expressed in the opinion of Dr. Ahmad R. Riahinejad, a consultative
27 examining psychologist, and Dr. Jobst Singer, a consultative examining
28 psychiatrist.  (Plaintiff's Motion at 4-5).  Specifically, plaintiff alleges that the

4

ALJ disregarded (1) Dr. Riahinejad's findings that plaintiff has (a) marked limitations in the ability (i) to make judgments on work related decisions; and (ii) to respond appropriately to work pressures in a usual work setting; and (b) moderate limitation in the ability to respond appropriately to changes in a routine work setting; and (2) Dr. Singer's findings that plaintiff had slight to moderate limitations in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Plaintiff's Motion at 4-5). For the reasons discussed below, this Court agrees that the ALJ erred in at least her assessment of Dr. Riahinejad's opinions.

### 1.  Pertinent Facts

At the May 10, 2006 hearing before the ALJ, the medical expert, psychiatrist Charles Agler, testified to the following: (i) plaintiff had a medically determinable mental impairment which appeared to cause some mild to moderate limitations in plaintiff's mental functioning (AR 570); (ii) the available evidence was insufficient to permit adequate assessment of plaintiff's mental impairment (AR 19, 570); (iii) if more recent testing showed that plaintiff continued to have a low IQ and/or ADHD, plaintiff might equal listing 12.04 (AR 570); and (iv) consultative psychological and psychiatric examinations should be ordered to the extent such evidence was unavailable from a treatment source (AR 571). The ALJ subsequently ordered post-hearing psychological and psychiatric consultative examinations. (AR 19).

On July 7, 2006, Dr. Riahinejad conducted a complete psychological evaluation of plaintiff which reflects, in pertinent part:

> [Plaintiff] seems to be able to understand, remember and carry out simple instructions without much difficulty. He would have significant difficulty understanding, remembering, and carrying out complex and detailed instructions.

///

>[Plaintiff] seems to be able to accept instructions from a supervisor and relate with coworkers.  [Plaintiff] does not seem to have any significant problem with pace or persistence.

(AR 548).  In an attached Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("Medical Source Statement"), Dr. Riahinejad checked boxes indicating that plaintiff has (i) marked limitation in the ability to respond appropriately to work pressures in a usual work setting; and (ii) moderate limitation in the ability to respond appropriately to changes in a routine work setting.  (AR 549-50).

On August 12, 2006, Dr. Singer conducted a complete psychiatric evaluation of plaintiff which reflects, in pertinent part:

>[Plaintiff's] ability to understand, remember, and perform instructions is unimpaired for simple tasks and mildly impaired for complex tasks.  Although persistence cannot be fully evaluated in an evaluation of this type, no psychiatric factors were identified that would significantly interfere with [plaintiff's] ability to complete a normal day of work other than his reported lack of focus or concentration due to his recalling or thinking about how he was abused by his parents as a child.  [Plaintiff's] judgment showed no significant impairment during the interview that would increase safety risks above normal in the usual work setting. . . .
>
>[Plaintiff's] ability to relate and interact with coworkers and the public, as well as the ability to be supervised, is not impaired but could be when he starts recalling and being distracted by thoughts about his abuse as a child by his parents.

(AR 556). In an attached Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Singer checked the boxes indicating that plaintiff has slight limitations in his ability to understand, remember, and carry out work-

related instructions, and slight to moderate limitations in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. Dr. Singer further opined that plaintiff would have "periodic increases in impairment as abuse related feelings/thoughts intrude into [plaintiff's] consciousness periodically that cannot be evaluated directly at this time." (AR 557-58).

### 2.  Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[1] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

///

---

[1] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

The foregoing standards also apply to opinions of examining physicians. See Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### 3. Analysis

As noted above, the ALJ determined that plaintiff had the severe impairment of borderline intellectual functioning, but that he nonetheless retained the ability to perform unskilled work at all exertional levels. (AR 22-23).  In

///

reviewing the medical opinion evidence, the ALJ summarized Dr. Riahinejad's findings as follows:

> Dr. Riahinejad opined that [plaintiff] is able to understand remember and carry out simple instructions without much difficulty, he would have significant difficulty understanding, remembering and carrying out complex and detailed instructions, he is able to accept instructions from a supervisor and relate with coworkers, and he has no significant problem with pace or persistence.

(AR 22) (citing Exhibit 10F [AR 543-52]).  The ALJ did not mention Dr. Riahinejad's indications in the Medical Source Statement that plaintiff has marked limitation in his ability to respond appropriately to work pressures, and moderate limitation in his ability to respond appropriately to changes in a routine work setting.  (AR 22).  Such opinions are significant probative evidence that the ALJ should have considered when determining residual functional capacity.  The ALJ's silent disregard of such opinions was legal error.[2]

The Court cannot conclude that such error was harmless.  Limitations in plaintiff's ability to handle stress or routine changes could prevent plaintiff from doing even unskilled work, and thus should have been considered when determining plaintiff's residual functional capacity.  See SSR 85-15 ("Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in [an ALJ's residual functional capacity] assessment."); see also SSR 85-16 ("[A]ll limits on work-related activities

---

[2]Although defendant suggests that the ALJ had a basis to reject the opinions in issue because the limitations reflected therein are greater than those reflected in treatment notes, (Defendant's Motion at 4), the ALJ did not so state.  This court may not rely on a rationale not cited by the ALJ in support of his determination.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); Barbato v. Commissioner of Social Security Administration, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996)("Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision . . .").

resulting from [a claimant's] mental impairment must be described in the mental [residual functional capacity] assessment."). Contrary to defendant's suggestion, limiting plaintiff to "unskilled" work does not, or at least does not necessarily account for such limitations. See, e.g., SSR 85-15 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

For the foregoing reasons, this case must be remanded for further consideration of the medical opinion evidence.

## V.  CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 30, 2010

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff also argues, and defendant disputes, that the ALJ failed properly to consider the findings of Dr. Singer's consultative examination, and erroneously failed to obtain testimony from a vocational expert. (Plaintiff's Motion at 5). The Court need not, and has not adjudicated these challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. Nonetheless, on remand the ALJ may wish to address whether the "periodic increases in impairment" Dr. Singer noted might further limit plaintiff's mental residual functional capacity, and also determine whether testimony from a vocational expert may be required to satisfy the Commissioner's burden at step 5.

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).